***********
The Full Commission has reviewed the Deputy Commissioner's Opinion and Award based on the record of the proceedings before the Deputy Commissioner. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, and having reviewed the competent evidence of record, the Full Commission hereby affirms the Opinion and Award with minor modifications.
 ***********
Based upon the competent and credible evidence, the Full Commission finds as fact and concludes as a matter of law the following:
 FINDINGS OF FACT
1. Plaintiff has a date of birth of October 1, 1959. He began working for Geymont Construction which is a grading company on or about 1974. He performed job duties as a mechanic working on heavy equipment.
2. On January 23, 1996, Plaintiff suffered a back injury when he fell off of a grader while performing job duties for the Employer. His back injury was accepted as compensable by Builders Mutual. With regard to the 1996 injury, Plaintiff came under the care of Dr. Leon Dickerson. Dr. Dickerson's notes reflect that on January 16, 1998, Plaintiff had a positive discogram at the L4-5 level. On February 18, 1998, Dr. Dickerson performed surgery at the L4-5 level that consisted of a fusion with Steffee plates.
3. Dr. Dickerson examined Plaintiff on June 11, 1998 and indicated that he could return to work with a 10 pound lifting restriction working four hours per day. Plaintiff's straight leg raising test was normal which would be an indicator that there was no type of radicular back pain into the lower extremities. There was no evidence of nerve root impingement. The Plaintiff denied any leg pain. Dr. Dickerson felt that Plaintiff had excellent results from the surgery.
4. Plaintiff returned to work for Geymont Construction in a light duty capacity on or about June 15, 1998.
5. Plaintiff was again examined by Dr. Dickerson on July 23, 1998. Dr. Dickerson felt that Plaintiff was still doing well. Plaintiff on his own represented to Dr. Dickerson that he wanted to go back to his regular duty work. Dr. Dickerson's examination that day produced normal findings. Dr. Dickerson instructed the Plaintiff to return to his regular duty type work, but noted that he should only work approximately 40 hours per week. Again, Plaintiff's straight leg raise test was normal and there were no problems involving back pain into the lower extremities.
6. On September 23, 1998, Dr. Dickerson pronounced the Plaintiff at a maximum medical improvement. The Plaintiff could perform his regular job duties as a mechanic with a 50 pound lifting restriction. Dr. Dickerson also lifted the Plaintiff's 40 hour work restriction and stated that he could gradually work up to his regular hours per week of 50 or more. Plaintiff, during that visit noted occasional pain, but there was no indication of back pain into his legs.
7. Plaintiff performed regular job duties for the Employer as a mechanic on heavy duty equipment prior to his August 27, 1999 claim.
8. Plaintiff on August 27, 1999, was repairing a D-8 bulldozer and various parts of the bulldozer were on the ground. Plaintiff, while working on top of the bulldozer, fell approximately 7 feet and landed on his lower back. His lower back came into contact with metal tracks from the bulldozer that were on the ground. He experienced immediate leg numbness following the fall. He states that he could barely walk. He felt sharp pain from his back into his legs. After this incident, Plaintiff experienced constant pain. Subsequent to the August 27, 1999 incident, Plaintiff reported that his back pain intensified and worsened and affected his ability to earn wages. Plaintiff stated that co-employee Bob Workman witnessed the August 27, 1999 fall. He also reported the incident to Jerry Geymont who is the owner of the company the next day.
9. Following the August 27, 1999, fall, Plaintiff initially received conservative treatment from Dr. Marchese and Dr. Smith. Plaintiff felt that he was not making any progress under these physicians and returned to Dr. Dickerson who had performed the earlier surgery after the January, 1996 injury.
10. On July 20, 2000, Plaintiff was examined by Dr. Dickerson. Dr. Dickerson subsequently ordered a discogram that was interpreted to be positive at the L5-S1 level. This is a different level than the earlier January, 1996 injury at the L4-5 level. Plaintiff has been totally disabled since July 20, 2000.
11. Dr. Dickerson on November 29, 2000 performed surgery that consisted of an anterior BAK fusion at the L5-S1 level.
12. Dr. Dickerson has provided follow up treatment post surgery. At the present time, Dr. Dickerson does not feel that Plaintiff is ready to return to work as a mechanic. Plaintiff testified that he is currently walking approximately three miles per day, riding an exercise bike, and working out on a weight bench lifting ten pounds with his legs as well as performing exercises with his arms. Plaintiff did perform some voluntary security guard work for the Employer, but did not get paid for these services.
13. Dr. Dickerson's testimony is that the August 27, 1999 incident caused a new injury at L5-S1 level. Dr. Dickerson further testified that the January, 1996 claim was at the L4-5 level.
14. Plaintiff has also alleged a fall which occurred in January, 2000. However, Plaintiff testified that he made no report of this injury to anyone. There is insufficient evidence that this incident caused any of Plaintiff's symptoms which have caused him to be unable to earn wages.
Plaintiff also testified that he and his wife lived in a trailer owned by Defendant-Employer. There is insufficient evidence to determine the value of the use of the trailer, or that this arrangement was in lieu of any wages. To the contrary, the parties entered into a Consent Order To Pay Temporary Total Disability wherein the parties agreed to use plaintiff's 1999 W-2 statement to calculate plaintiff's average weekly wage at $609.68 and to pay TTD at the resulting compensation rate of $406.47 per week. Further, even if the Commission was able to determine the value of the trailer and find that the trailer was provided in lieu of other compensation, and thereby was wages, the Commission notes that plaintiff and his wife continued to enjoy the use of the trailer after plaintiff's injury and during the period of his disability, until he moved to Kentucky; therefore, defendants would be entitled to a credit for the value of the trailer which for the applicable period would have resulted in the same compensation rate. Moreover, the evidence is that plaintiff provided additional services for defendant-employer in providing security by watching over the property, equipment, and supplies adjacent to the trailer and that these services continued until plaintiff moved out of the trailer; thus, the trailer was not compensation for services provided in his capacity as a mechanic and thereby is not compensation for the job which is the basis of this claim.
Under the circumstances of this case, the parties' agreement to base plaintiff's wages on his 1999 W-2 statement was reasonable, and having reduced this agreement to writing and having the agreement approved by the Commission in the Consent Order, plaintiff has waived any complaint concerning the wage rate.
 ***********
Based upon the foregoing, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. Plaintiff experienced a new injury to his back on August 27, 1999, and Defendant Geymont Construction Company and its insurance carrier CompFirst are responsible for paying ongoing temporary benefits from July 20, 2000 and continuing. N.C.G.S. § 97-2(6), N.C.G.S. § 97-29.
2. The applicable average weekly wage for this claim is the $609.68 which yields a compensation rate of $406.47 per week as agreed upon by the parties in the Consent Order.
3. Plaintiff is entitled to have the above named Defendants pay for any medical treatment incurred or to be incurred as a result of his August 27, 1999, injury by accident. N.C.G.S. § 97-25.
 ***********
Based upon the foregoing, the undersigned enters the following:
 AWARD
1. Defendants Geymont Construction Company and its insurance carrier CompFirst shall pay to Plaintiff temporary total disability compensation of $406.47 per week as of July 20, 2000, and continuing. The Defendants shall receive credit for all amounts previously paid pursuant to the consent order in this case. An attorney fee in the amount of 25% of this award is approved for Plaintiff's Counsel. If any lump sum that has accrued is due to Plaintiff then the Defendants shall deduct 25% and send directly to Plaintiff's Counsel. Of the continuing amount, the Defendants shall send every fourth compensation check to Plaintiff's attorney.
2. The above named Defendants shall pay for all medical treatment incurred or to be incurred by Plaintiff as a result of his injury by accident of August 27, 1999.
3. The above named Defendants shall pay the costs of this action including an expert witness fee of $335.00 to Dr. Leon Dickerson.
 S/______________ RENE C. RIGGSBEE COMMISSIONER
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER